UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

Case No.

PATRICK COPPOLA and PAMELA SPIGARELLI,
individually, and on behalf of others similarly situated,

    Plaintiffs

v.

WANDERERS CLUB PARNTERS, LLC, and
WANDERERS CLUB HOLDINGS, LLC,

    Defendants

_____/

## COMPLAINT

Plaintiffs, PATRICK COPPOLA and PAMELA SPIGARELLI, individually, and on behalf of all others similarly situated (collectively, "Plaintiffs"), hereby file this Complaint and bring this action against WANDERERS CLUB PARTNERS, LLC, and WANDERERS CLUB HOLDINGS, LLC (collectively, "Defendants"), asserting individual and collective claims under the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 201, *et seq.* In support thereof, Plaintiffs allege as follows:

### INTRODUCTORY STATEMENT

1.    Plaintiffs, and all similarly situated, are individuals who, at all relevant times, have worked as hourly employees for Defendants at a facility called The Wanderers Club and have held positions that appropriately must be classified as non-exempt under Section 13(a) of the FLSA (29 U.S.C. § 213(a)).

1

2.      As described more fully below, prior to December 2017, all such employees were paid overtime premium compensation for all hours worked in excess of forty (40) hours per week. However, starting in or about December 2017, Defendants inexplicably and unlawfully began to deny Plaintiffs, and all similarly situated, overtime premium compensation based on a legally flawed application of the "seasonal amusement and recreational exemption" of Section 13(a)(3) of the FLSA (29 U.S.C. § 213(a)(3)). This unlawful practice continues to the present day.

3.      Under the FLSA, the "seasonal amusement and recreational exemption" is only available to establishments that operate for no more than seven (7) months in any calendar year, or alternatively, satisfy certain financial conditions that are expressly defined in the statutory text. However, Defendants do not legally qualify for the "seasonal amusement and recreational exemption" because, *inter alia*, The Wanderers Club is open for business year round; and, upon information and belief, its average receipts for any six (6) months of each relevant calendar year were always more than thirty-three and one-third percent ($33^{1}/_{3}$ %) of its average receipts for the other six (6) months of such year. Moreover, because application of the "seasonal amusement and recreational exemption" is an accounting question that is based on a straightforward analysis of an establishment's cash receipts, Defendants, at all relevant times, were in a position to realize that they did not qualify for the "seasonal amusement and recreational exemption."

4.      Defendants thus knew or showed reckless disregard for the FLSA in denying employees of The Wanderers Club overtime premium compensation starting in December 2017 and continuing to the present. As a result, Defendants have violated, and continue to willfully violate, the FLSA.

5.      In addition, the seriousness of Defendants' violation of the FLSA is aggravated by the fact that Plaintiffs, and all similarly situated, were required, as a term and condition of their

continued employment at The Wanderers Club, to sign statements falsely acknowledging that they are not entitled to overtime premium compensation because of the "seasonal amusement and recreational exemption." The mandated statements demonstrate, *inter alia*, that Defendants acted willfully to violate the FLSA because Defendants were obviously aware of the requirements of the FLSA and, at all relevant times, consciously chose to flout the law.

6. Plaintiffs therefore bring this lawsuit as a collective action under the FLSA seeking, *inter alia*, to recover unpaid overtime premium compensation owed to Plaintiffs, and all similarly situated, for overtime hours worked in excess of forty (40) hours per week going back three (3) years from the date of the filing of this Complaint; liquidated damages; attorneys' fees and costs; and all other relief this Court deems appropriate.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants reside in this judicial district; and a substantial part of the events and/or omissions giving rise to this action occurred in this judicial district.

## PARTIES

9. Plaintiff, Patrick Coppola ("Plaintiff Coppola"), is an adult individual who resides in Palm Beach County, Florida.

10. Plaintiff, Pamela Spigarelli ("Plaintiff Spigarelli"), is an adult individual who resides in Palm Beach County, Florida.

11. Defendant, Wanderers Club Partners, LLC ("Defendant WC-Partners"), is a limited liability company that is organized and exists under the laws of the State of Florida; and which operates a business called "The Wanderers Club" at 1900 Aero Club Drive, Wellington, Florida.

12. At all relevant times, Defendant WC-Partners has had annual gross volume of sales made or business done in an amount not less than $500,000.

13. At all relevant times, Defendant WC-Partners has acted through its authorized employees and agents, all of whom were acting within the scope of their employment and/or agency in the course of business, mission, and/or affairs for Defendant WC-Partners.

14. Defendant, Wanderers Club Holdings, LLC ("Defendant WC-Holdings"), is a limited liability company that is organized and exists under the laws of the State of Florida; and which, upon information and belief, maintains a principal place of business at 13501 South Shore Boulevard, Suite 103, Wellington, Florida.

15. At all relevant times, Defendant WC-Holdings has had an annual gross volume of sales made or business done in an amount not less than $500,000.

16. At all relevant times, Defendant WC-Holdings has acted through its authorized employees and agents, all of whom were acting within the scope of their employment and/or agency in the course of business, mission, and/or affairs for Defendant WC-Holdings.

17. At all relevant times, Defendants have functioned, and continue to function, as a single enterprise for purposes of the FLSA because Defendants have engaged, and continue to engage, in related activities performed for a common business purpose under unified operation and/or common control.

18. At all relevant times, Defendants have functioned, and continue to function, as joint employers under the FLSA.

19. At all relevant times, Defendants jointly exercised direct control over the terms and conditions of Plaintiffs' employment.

## GENERAL FACTUAL ALLEGATIONS

A. **Background Regarding Defendants' Improper Utilization of the "Seasonal Amusement and Recreational Exemption"**

20. Since approximately 2016, Defendants have owned and operated – as a single enterprise and/or as joint employers – a private membership club known as The Wanderers Club that offers members year-round access to, *inter alia*, a full eighteen (18) hole golf course; two (2) short-game golf practice areas; a driving range; tennis courts; a four thousand (4,000) square foot state-of-the-art fitness center, with a massage room and a sauna; an Olympic-size swimming pool; several restaurants and bars; and a ballroom and other spaces that are rented for weddings, meetings, and special events.

21. In addition, members of The Wanderers Club may take lessons from golf and tennis pros, and may sign up for individualized and group fitness classes.

22. The Wanderers Club generates revenue throughout the course of the year from, *inter alia*, membership initiation fees, membership dues, food and beverage sales, event rentals, green fees, tennis court fees, fitness class fees, and golf and tennis pro shop retail sales.

23. The Wanderers Club is open all twelve (12) months of the year. Indeed, it never closes as demonstrated by the fact that the facility's fitness center is open twenty-four (24) hours each and every day.

24. In order to provide the above-referenced services, Defendants maintain a staff at The Wanderers Club consisting of approximately two hundred (200) employees, which includes, *inter alia*, maintenance workers, non-tipped food and beverage workers, cooks, housekeepers, activities staff, golf and tennis pros, golf and tennis pro shop retail workers, and office staff.

5

25.     The vast majority of employees who, at all relevant times, worked and continue to work for Defendants at The Wanderers Club are appropriately classified as non-exempt under the FLSA because they never have satisfied any of the exemptions set forth under Section 13(a) of the FLSA (29 U.S.C. § 213(a)).  Consequently, all such non-exempt employees are entitled to an hourly rate of pay no less than minimum wage and an overtime premium rate of time-and-half their regular rate of pay for all hours worked in excess of forty (40) hours per week.

26.     In or about December 2017, Defendants began to unlawfully claim coverage under the "seasonal amusement and recreational exemption" of the FLSA, and accordingly, subject all such otherwise non-exempt employees to a uniform policy and practice of denying them overtime premium compensation for any hours worked in excess of forty (40) hours per week.

27.     Under the FLSA, the "seasonal amusement and recreational exemption" is only available to an employer "which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference, if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than $33^{1}/_{3}$ per centum of its average receipts for the other six months of such year…" See 29 U.S.C. § 213(a)(3).

28.     At all relevant times, Defendants' reliance on the "seasonal amusement and recreational exemption" has and continues to be unlawful because, *inter alia*:

    (a)     The Wanderers Club does not qualify as "an amusement or recreational establishment, organized camp, or religious or non-profit educational conference"; and

    (b)     Upon information and belief, there was no calendar year from 2016 to the present in which The Wanderers' Club's average receipts for any six (6)

months of such year were not more than thirty-three and one-third percent ($33^1/_3$ %) of its average receipts for the other six (6) months of such year.

29.    Moreover, because the applicability of the "seasonal amusement and recreational exemption" is, in part, determined by an analysis of an establishment's cash receipts from the previous calendar year, Defendants knew that they were in violation of the law or showed reckless disregard for the law; and thus acted willfully, in denying their non-exempt employees overtime premium pay solely under the "seasonal amusement and recreational exemption."

30.    Worse yet, in or about December 2017, Defendants required each current employee of The Wanderers Club, as a term and condition of continued employment, to sign a form falsely and wrongfully acknowledging that they were exempt from overtime pay because of the "seasonal amusement and recreational exemption" under the FLSA ("the False Disclosure Form"). On information and belief, each False Disclosure Form substantially stated, as follows:

**WANDERERS CLUB PARTNERS, LLC**
**DISCLOSURE TO EMPLOYEES THAT IT IS EXEMPT**
**FROM THE PAYMENT OF OVERTIME**
**UNDER THE FAIR LABOR STANDARDS ACT**

Wanderers Club Partner, LLC is exempt from the payment of overtime pay under the Fair Labor Standards Act by virtue of the Seasonal Amusement or Recreational Exemption. I acknowledge as an employee of Wanderers Club, LLC, that I will not be paid overtime pay even if I work more than forty (40) hours per week.

By:    _____
       Printed Name

       _____
       Signature

Date:  _____

31.    After December 2017, Defendants also required all new hires at The Wanderers Club to sign a False Disclosure Form as a term and condition of commencing employment.

7

32. Upon information and belief, Defendants required all employees at The Wanderers Club to sign a False Disclosure Form in order to cause such employees to incorrectly believe that they were not entitled to overtime premium compensation and/or to dissuade such employees from independently investigating the issue of whether they were and are entitled to overtime premium compensation for all hour worked in excess for forty (40) per week at The Wanderers Club.

33. Because Defendants knew that they were not entitled to rely on the "seasonal amusement and recreational exemption" as a basis to deny non-exempt employees overtime premium compensation, or showed reckless disregard for the law, the act of requiring each employee to sign a False Disclosure Form additionally demonstrates Defendants' willfulness.

34. Since December 2017, many non-exempt employees at The Wanderers Club have worked in excess of forty (40) hours per week but have not been compensated at a rate of time-and-a-half for such overtime hours worked.

35. For example, some non-exempt employees at The Wanderers Club regularly work in excess of fifty (50) or sixty (60) hours per week without overtime compensation.

36. At no relevant time have Defendants had any lawful basis to deny any otherwise non-exempt employees overtime premium compensation for any hours worked in excess of forty (40) hours per week.

37. However, upon information and belief, Defendants have not paid any employee at The Wanderers Club overtime premium compensation since approximately December 2017.

B. **Facts Relevant to Plaintiff Coppola**

38. Plaintiff Coppola was employed by Defendants Wanderers from approximately 2015 until early 2019. At all relevant times, Plaintiff Coppola worked for Defendants as a Locker Room Attendant and a Guest Services Manager.

39. As a Locker Room Attendant, Plaintiff Coppola's primary duties were to maintain locker rooms, organize towels and soaps, and clean golf shoes.

40. As a Guest Services Manager, Plaintiff Coppola's primary duties were essentially the same primary duties of a Locker Room Attendant, and additionally included the responsibility to personally (or assign other Locker Room Attendants to) clean dirty laundry, clean pool cushions, and restock supplies.

41. At all relevant times, as a Locker Room Attendant and a Guest Services Manager, Plaintiff Coppola reported to Defendants' Food and Beverage Director.

42. More than ninety percent (90%) of the time, the Guest Services Manager performed the exact same tasks as a Locker Room Attendant.

43. At no relevant time did Plaintiff Coppola's primary duties as a Locker Room Attendant and/or a Guest Services Manager include the management of Defendants' enterprise, or include managing a customarily recognized department or subdivision of the enterprise.

44. At no relevant time was Plaintiff Coppola, as a Locker Room Attendant and/or a Guest Services Manager, customarily and regularly required to direct the work of at least two (2) or more other full-time employees or their equivalent.

45. At no relevant times did Plaintiff Coppola, as a Locker Room Attendant and/or a Guest Services Manager, have the authority to hire or fire other employees; nor were Plaintiff Coppola's suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees given particular weight.

46. At no relevant time did Plaintiff Coppola's primary duties as a Locker Room Attendant and/or a Guest Services Manager include the performance of office or non-manual work directly related to the management of Defendants, or their customers.

47. At no relevant time did Plaintiff Coppola's primary duties as a Locker Room Attendant and/or a Guest Services Manager include the exercise of discretion and independent judgment with respect to matters of significance.

48. At all relevant times, the positions of Locker Room Attendant and Guest Services Manager were required to be classified as non-exempt under the FLSA.

49. Prior to December 2017, Defendants paid Plaintiff Coppola overtime premium compensation for all hours worked in excess of forty (40) hours each week.

50. However, in or about December 2017, Defendants required Plaintiff Coppola, as a term and condition of his continued employment, to sign a False Disclosure Form falsely and wrongfully acknowledging that Defendants were exempt from paying him overtime because of the "seasonal amusement and recreational exemption" under the FLSA.

51. After Plaintiff Coppola signed a False Disclosure Form in December 2017, he ordinarily worked ten (10) to twenty (20), or more, overtime hours each week.

52. However, from the time that Plaintiff Coppola signed a False Disclosure Form in December 2017, he never received any overtime premium compensation from Defendants for any hours worked in excess of forty (40) hours per week.

53. Plaintiff Coppola has submitted his written consent to participate as a plaintiff in this action. See Declaration and Consent to Join Litigation of Patrick Coppola (attached hereto as Exhibit "A").

**C.   Facts Relevant to Plaintiff Spigarelli**

54. Plaintiff Spigarelli was employed by Defendants Wanderers from approximately 2014 until approximately July 25, 2019. At all relevant times, Plaintiff Spigarelli worked for Defendants Wanderers as a non-tipped Bartender and Banquet Server.

55. As a Bartender and Banquet Server, Plaintiff Spigarelli's primary duties were to serve food and beverages to members and their guests at The Wanderers Club.

56. At no relevant time did Plaintiff Spigarelli's primary duties as a Bartender and Banquet Server include the management of Defendants' enterprise, or include managing a customarily recognized department or subdivision of the enterprise.

57. At no relevant time was Plaintiff Spigarelli, as a Bartender and Banquet Server, customarily and regularly required to direct the work of at least two (2) or more other full-time employees or their equivalent.

58. At no relevant times did Plaintiff Spigarelli, as a Bartender and Banquet Server, have the authority to hire or fire other employees; nor were Plaintiff Spigarelli's suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees given particular weight.

59. At no relevant time did Plaintiff Spigarelli's primary duties as a Bartender and Banquet Server include the performance of office or non-manual work directly related to the management of Defendants, or their customers.

60. At no relevant time did Plaintiff Spigarelli's primary duties as a Bartender and Banquet Server include the exercise of discretion and independent judgment with respect to matters of significance.

61. At all relevant times, the positions of Bartender and Banquet Server were required to be classified as non-exempt under the FLSA.

62. Prior to December 2017, Defendants paid Plaintiff Spigarelli overtime premium compensation for all hours worked in excess of forty (40) hours each week.

63. However, in or about December 2017, Defendants required Plaintiff Spigarelli, as a term and condition of her continued employment, to sign a False Disclosure Form falsely and wrongfully acknowledging that Defendants were exempt from paying her overtime because of the "seasonal amusement and recreational exemption" under the FLSA.

64. After Plaintiff Spigarelli signed a False Disclosure Form in December 2017, she ordinarily worked ten (10) to twenty (20) or more overtime hours each week.

65. However, from the time that Plaintiff Spigarelli signed a False Disclosure Form in December 2017, she never received any overtime premium compensation from Defendants for any hours worked in excess of forty (40) hours per week.

66. Plaintiff Spigarelli has submitted her written consent to participate as a plaintiff in this action. See Declaration and Consent to Join Litigation of Pamela Spigarelli (attached hereto as Exhibit "B").

## COLLECTIVE ALLEGATIONS

67. Each of the preceding paragraphs of this Complaint are incorporated by reference herein as though fully set forth at length below.

68. This action is filed on behalf of all of Defendants' hourly employees who have, within the past three (3) years prior to the fling of this Complaint have been, and/or continue to be, improperly classified as "exempt" under the "seasonal amusement and recreational exemption" of the FLSA; who, at all relevant times, have consistently and unlawfully been deprived of overtime premium compensation; and who seek to recover all overtime premium compensation due to them under the FLSA.

69. Defendants' non-compliance with the FLSA was willful.

70. Plaintiffs, individually and on behalf of all similarly situated employees, seek relief on a collective basis under Section 16(b) of the FLSA (29 U.S.C. § 216(b)) challenging Defendants' practice of failing to pay its employees overtime premium compensation for all hours worked in excess of forty (40) hours per week. The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendants' records, and potential collective group members may be notified of the pendency of this action via mail and email.

71. Accordingly, Plaintiffs bring this action pursuant to Section 16(b) of the FLSA (29 U.S.C. § 216(b)), on behalf of themselves and all those similarly situated, with the following proposed collective definition ("the Collective"):

> *All persons employed by Defendants at The Wanderers Club within the three (3) years preceding the filing of this action who were paid on an hourly basis and worked more than forty (40) hours in any given week, but were not paid overtime compensation.*

Upon information and belief, Plaintiffs believe that the definition of the Collective will be further refined following discovery of Defendants' books and records.

72. Plaintiffs are unable to state the exact number of the Collective without discovery of Defendants' books and records, but estimate the Collective to be no less than two hundred (200) to three hundred (300) individuals.

73. Plaintiffs and all other such members of the Collective are similarly situated in that:

    (a) They all currently work, or previously worked, for Defendants at The Wanderers Club;

    (b) They all were subject to the same pay policies and practices;

    (c) They were all were required to sign False Disclosure Statements as a term and condition of employment with Defendants at The Wanderers Club;

  (d) Defendants denied all of them overtime premium compensation for hours worked in excess of forty (40) hours per week based solely on the unlawful claim that they are exempt under the "seasonal amusement and recreational exemption" of the FLSA; and

  (e) They all currently work, or previously worked, in otherwise non-exempt job positions.

## COUNT I – FLSA OVERTIME VIOLATION

74. Each of the preceding paragraphs of this Complaint are incorporated by reference herein as though fully set forth at length below.

75. At all relevant times, Defendants have been subject to the overtime premium pay requirements of Section 7(a) of the FLSA (29 U.S.C. § 207(a)) because they own and operate – as a single enterprise and/or as joint employers – The Wanderers Club, which, at all relevant times:

  (a) Has had employees engaged in commerce or in the production of goods for commerce, or that has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

  (b) Has been an enterprise under the FLSA whose annual gross volume of sales made or business done is not less than $500,000.00.

76. At all relevant times, Defendants have employed Plaintiffs and each member of the Collective consistent with the terms of the FLSA.

77. Plaintiffs and all other members of the Collective were, or continue to be, employees of Defendants within the meaning of the FLSA; and as a result, at all relevant times, Plaintiffs and all other members of the Collective have been, and continue to be, entitled to, *inter*

*alia*, receive overtime premium compensation from Defendants for all hours worked in excess of forty (40) hours per week.

78. Section 13 of the FLSA (29 U.S.C. § 213), exempts certain categories of employees from federal minimum wage and overtime wage obligations. None of these FLSA exemptions apply to Plaintiffs or any other member of the Collective.

79. At all relevant times, Plaintiffs and all other members of the Collective have been subjected to a uniform compensation policy and/or practice that unlawfully has, and continues to, deprive them of overtime premium compensation in violation of Section 207(a) of the FLSA (29 U.S.C. § 207(a)).

80. This uniform policy and/or practice has, at all relevant times, been applied, and continues to be applied, to all employees of The Wanderers Club who appropriately must be classified as non-exempt under Section 13(a) of the FLSA (29 U.S.C. § 213(a)).

81. As a direct and proximate result of Defendants' unlawful conduct, Defendants have violated the FLSA.

82. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and all other members of the Collective have been damaged.

83. At all relevant times, Defendants have acted, and continued to act, willfully or have showed reckless disregard of the FLSA, by failing or refusing to pay their non-exempt employees overtime premium compensation for all hours worked in excess of forty (40) hours per week.

84. Plaintiffs and all other members of the Collective are entitled to damages equal to the amount of all overtime premium compensation owed to them, but unpaid, within the three (3) years from the date each Plaintiff joins this action, plus periods of equitable tolling.

85. Defendants have acted neither in good faith nor with reasonable grounds to believe that their acts and/or omissions were not a violation of the FLSA; and as a result, Plaintiffs and all members of Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium compensation due to them under Section 16(b) of the FLSA (29 U.S.C. § 216(b)). Alternatively, should the Court find that Defendants acted in good faith and/or had reasonable grounds to believe that their acts and/or omissions were not in violation of the FLSA, then Plaintiffs and the other members of the Collective are entitled to an award of prejudgment interest at the applicable legal rate.

86. As a direct and proximate result of Defendants' unlawful conducts set forth above, Plaintiff Coppola is specifically entitled to an award of actual damages for unpaid overtime premium compensation in the amount of approximately $15,000, plus liquidated damages (or, in lieu of liquidated damages, and an award of prejudgment interest), attorneys' fees and costs, and all other relief the Court deems appropriate. These amounts are calculated without the benefit of wage and hour records, and are based on Plaintiff Coppola's good faith recollection and belief.

87. As a direct and proximate result of Defendants' unlawful conduct set forth above, Plaintiff Spigarelli is specifically entitled to an award of actual damages for unpaid overtime premium compensation in the amount of approximately $20,000, plus liquidated damages (or, in lieu of liquidated damages, and an award of prejudgment interest), attorneys' fees and costs, and all other relief the Court deems appropriate. These amounts are calculated without the benefit of wage and hour records, and are based on Plaintiff Spigarelli's good faith recollection and belief.

WHEREFORE, Plaintiffs respectfully request:

(a) A Declaration that Defendants have violated the FLSA;

(b)     All applicable damages under the FLSA including, but not limited, to an award of actual damages and liquidated damages (or, in lieu of liquidated damages, an award of prejudgment interest);

(c)     An Order designating this action as a collective action and directing the issuance of notice pursuant to 29 U.S.C. § 216(b);

(d)     An Order appointing Plaintiffs and their undersigned counsel to represent those individuals opting-in to the collective action;

(e)     An Order awarding attorneys' fees and costs; and

(f)     All other relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial in this action of all claims triable by a jury.

Respectfully submitted,

*/s/ Martin J. Sobol*

Martin J. Sobol, Esq. (*pro hac vice* pending)
Wade D. Albert, Esq. (*pro hac vice* pending)
E-mails: msobol@sobollaw.com; walbert@sobollaw.com
SOBOL LAW GROUP, P.C.
1845 Walnut Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (215) 988-0100
Facsimile: (215) 988-0193


s/ Cathleen Scott
Cathleen Scott, Esquire
Florida Bar No. 135331
Primary e-mail: CScott@scottwagnerlaw.com
Secondary e-mail: mail@scottwagnerlaw.com
SCOTT WAGNER & ASSOCIATES, P.A.
Jupiter Gardens
250 South Central Boulevard
Suite 104-A
Jupiter, FL 33458
Telephone: (561) 653-0008
Facsimile: (561) 653-0020

*Attorneys for Plaintiffs*

Dated: 4/16/2020